UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

SCOTTSDALE INSURANCE COMPANY and
NATIONAL CASUALTY COMPANY,

        Plaintiffs,                    No.1:11-cv-02912 (BEL)

-against-

ERIC B. BOUNDS, DOUGLAS E. HOMESLEY,
JOSHUA W. OVERBAUGH, and BOUNDS
TRUCKING INC. d/b/a COASTAL ROLL-OFF,

        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, Scottsdale Insurance Company ("Scottsdale") and National Casualty Company ("National Casualty") (collectively, the "Insurers") submit this Memorandum of Law and attached Exhibits in support of their Motion for Summary Judgment.

## PRELIMINARY STATEMENT

This case involves one issue for which all controlling facts are undisputed. The insurance policies at issue were cancelled prior to the date of an accident involving Joshua Overbaugh ("Overbaugh"). No other facts or issues matter. Because the policies were cancelled prior to the accident, the Insurers owe no obligation to defend or indemnify any party with respect to the accident or Overbaugh's lawsuit.

Bounds Trucking Inc. d/b/a Coastal Roll-Off ("Coastal Roll-Off") obtained an automobile insurance policy from National Casualty and an excess policy from Scottsdale through an insurance agent. Coastal Roll-Off arranged to finance the annual insurance premiums with a premium financing company, Premium Financing Specialists ("PFS"). Coastal Roll-Off failed to pay PFS as agreed and PFS cancelled both insurance policies on behalf of Coastal Roll-Off as its attorney-in-fact. PFS had a right to do so. The cancellation of both policies was effective December 6, 2007. On January 8, 2008, Overbaugh was allegedly injured in an accident with a vehicle owned by Coastal Roll-Off. Later, Overbaugh sued Coastal Roll-Off and others relating to the accident, a suit that remains pending.

The Insurers are not obligated to defend or indemnify any party with respect to the Overbaugh lawsuit or the accident because the insurance policies were cancelled more than one month prior to the accident.  All controlling facts relating to the cancellation of the policies are undisputed. Overbaugh has no interest in either policy and

has no right to dispute the valid cancellation of the policies by PFS on behalf of the insured.

The Insurers are entitled to summary judgment, as a matter of law, because the undisputed facts establish that the policies were cancelled prior to the date of the accident. No other facts or issues affect the cancellation of the policies or the adjudication of this matter.

## STATEMENT OF FACTS

Coastal Roll-Off procured a Commercial Auto policy from National Casualty, policy number CTO0117760, with a policy period of October 5, 2007 through October 5, 2008 (the "Auto Policy") through an insurance agent, Atlantic Specialty Lines, Inc. (Seaholm Aff., ¶¶ 5-7; Owens Aff., ¶¶ 4 and 6; National Casualty Policy; Complaint, ¶ 10). Coastal Roll-Off also procured an Excess Liability policy, policy number XLS0045002, from Scottsdale with a policy period of October 5, 2007 through October 5, 2008 (the "Excess Policy").[1] (Seaholm Aff., ¶ 6; Owens Aff., ¶ 5; Scottsdale Policy; Complaint, ¶ 10).

Coastal Roll-Off arranged for payment of the annual policy premiums under a premium financing agreement with PFS (the "Agreement") whereby Coastal Roll-Off made an initial payment on October 5, 2007, and was obligated to make 9 additional monthly premium installment payments to PFS in accordance with the Agreement. (Seaholm Aff., ¶ 8; Owens Aff., ¶¶ 7-10 and Exhs. A, B, and C; Complaint, ¶ 11). According to the Agreement, Coastal's first installment payment was due to PFS on

---

[1] The term "Policies" will be used throughout this Memorandum to refer collectively to the Auto Policy and the Excess Policy.

November 5, 2007. (Owens Aff., Exh. C; Complaint, ¶ 11). The Agreement between PFS and Coastal Roll-Off provides, among other things:

> The named insured:
> ...
> 2. Irrevocably appoints [PFS] attorney-in-fact of the insured with full power of substitution and full authority upon default to cancel all policies above identified, receive all sums assigned to Lender or in which it has granted Lender a security interest and to execute and deliver on behalf of the insured documents, instruments, forms and notices relating to the listed insurance policies in furtherance of this agreement.
> …
> Insured and [PFS] agree that:
> …
> 7. CANCELLATION: [PFS] may cancel the insurance policies after providing at least 10 days notice of its intent to cancel or any other required statutory notice if the insured does not pay any installment according to the terms of this Agreement … .

(Owens Aff., Exh. C).

On November 12, 2007, PFS mailed Coastal Roll-Off a Notice of Intent to Cancel which indicates, among other things, "Your payment is now past due. If PFS does not receive the amount due on or before 11/30/07 your financed insurance policies will be cancelled." (Seaholm Aff., ¶ 10 and Exh. A; Complaint, ¶ 13 and Exh. C).

PFS sent Coastal Roll-Off a Notice of Cancellation on December 3, 2007, indicating that the Policies were cancelled for lack of payment. (Seaholm Aff., ¶ 11 and Exh. B; Complaint, ¶ 14, Exh. D).

The Notice of Cancellation indicates among other things: "TO THE INSURED: You are notified that the policies listed below are cancelled for non-payment of an installment in accordance with the conditions and terms of the Premium Finance Agreement which incorporates a power of attorney." (Id.).

4

The Notice of Cancellation indicates, among other things: "TO THE INSURER: The policies listed above are HEREBY CANCELLED by PFS on behalf of the insured in accordance with the authority given us by the insured to cancel the policies upon default in his payment to PFS." (Id.).

The Notice of Cancellation identifies both the Scottsdale and the National Casualty Policies and indicates an "Effective Date of Cancellation" of: "12/06/07." (Id.).

The Policies were never renewed or otherwise reinstated after December 6, 2007. (Seaholm Aff., ¶¶ 13-15).

On January 8, 2008, Douglas Homesley ("Homesley") was involved in an automobile accident while driving a truck allegedly owned by Coastal Roll-Off (the "Accident"). (Complaint, ¶ 24; Overbaugh Answer, ¶ 24; Overbaugh Complaint, ¶¶ 1-6[2]). The Accident also involved Overbaugh who was driving his own vehicle. (Id.).

On or about January 7, 2011, Overbaugh filed a Complaint in the Circuit Court for Worcester County, Maryland, entitled <u>Joshua W. Overbaugh v. Eric Bounds, Bounds Trucking, Inc. dba Coastal Roll-off, and Douglas E. Homesley</u> (the "Overbaugh Lawsuit"). (Complaint, ¶ 28 and Exhibit E; Overbaugh Answer, ¶ 28). After the Overbaugh Lawsuit was commenced, National Casualty retained the law firm of Eccleston and Wolf, PC of Hanover, Maryland, to defend Bounds, Coastal Roll-Off and Homesley. (Tilley Aff., ¶¶ 5-7). The Overbaugh Lawsuit remains pending.

On October 12, 2011, the Insurers initiated this action by the filing of their Complaint. The Complaint seeks a judgment declaring that the Policies were cancelled effective December 6, 2007 and, as a result, the Insurers owe no duty to defend or

---

[2] The Overbaugh Complaint is attached as Exhibit E to Plaintiffs' Complaint in this action, which itself is Exhibit 1 to this Memorandum.

5

indemnify any party with respect to the Accident or the Overbaugh Lawsuit. (Complaint, prayer for relief). Plaintiffs named as defendants and served the Summons and Complaint on: Coastal Roll-Off, Eric Bounds, Douglas Homesley, and Joshua Overbaugh. Only Mr. Overbaugh has appeared in this action. (Dkt. ## 13, 14, and 15). The remaining defendants failed to appear.

On May 17, 2012, this Court granted Plaintiffs default judgment against Coastal Roll-Off, Eric Bounds, and Douglas Homesley, leaving Mr. Overbaugh as the sole remaining defendant in this action. (Dkt. # 36).

## JURISDICTION

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs. *See* Francis v. Allstate Ins. Co., 2011 U.S. Dist. LEXIS 77415 at 13 (D. Md. 2011) (amount in controversy is measured by the "value of the object of the litigation"; in a declaration action, includes value of insurer's duty to defend and indemnify in underlying lawsuit); State Farm Mut. Auto Ins. Co. v. West, 149 F.Supp. 289, 294 (D. Md. 1957). Mr. Overbaugh's Lawsuit seeks $750,000 in damages. (Complaint, Exhibit E).

Plaintiffs seek a declaration of their rights and obligations, pursuant to 28 U.S.C. § 2201 with respect to the policies of insurance identified herein.

## STANDARD OF REVIEW

Summary judgment is appropriate when, after reviewing the record taken as a whole, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477

6

U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The party seeking summary judgment has the initial burden to show absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The non-movant must demonstrate that a genuine issue of material fact exists. Mere allegations or denials are insufficient. Anderson, 477 U.S. at 248. A mere scintilla of evidence supporting the case is also insufficient. Id.; *see also* Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); Jennings v. Univ. of N.C., 444 F.3d 255, 266 (4th Cir. 2006).

Here, the undisputed facts establish that PFS cancelled the Policies prior to the Accident acting on behalf of the insured as the insured's attorney-in-fact. The effective date of the cancellation was December 6, 2007, more than one month prior to the January 8, 2008 Accident. Consequently, neither Scottsdale nor National Casualty owe any duty to defend or indemnify any party with respect to the Accident or the Overbaugh Lawsuit. The Insurers are entitled to summary judgment as a matter of law.

## ARGUMENT

**A.    The Insurers Owe No Obligation to Indemnify or Defend Because PFS, on Behalf of the Insured, Cancelled the Policies Prior to the Accident.**

PFS cancelled the Policies effective December 6, 2007 on Coastal Roll-Off's behalf. Coastal Roll-Off never reinstated or renewed the Policies after cancellation. The cancellation by PFS, on behalf of the insured, was effective. Maryland's highest court and courts in sister states agree that when a premium finance company cancels a policy on behalf of an insured, the policy is cancelled and the insurer owes no further obligation to defend or indemnify any party.

*1. PFS cancelled the Policies effective December 6, 2007.*

When a premium finance company, acting under a power of attorney, cancels an insurance contract on behalf of an insured, the insurance contract is deemed cancelled and treated as if the notice of cancellation had been submitted by the insured. Northland Ins. Co. v. Walls, 291 Md. 604 (Md. 1981); Lowe v. United States Fidelity and Guaranty Co., 171 Colo. 215, 466 P.2d 73, 77 (Colo. 1970); Chamberlain v. Employer's Liability Assur. Corp., 289 Mass. 412, 194 N.E. 310, 312 (1935); Davis v. Roddie, 113 N.J. Super. 457, 274 A.2d 297, 300-01 (1971); Hayes v. Hartford Accident and Indemnity Co., 274 N.C. 73, 161 S.E.2d 552, 559 (1968); Liquori v. Aetna Cas. & Sur. Co., 384 A.2d 308, 313-14 (R.I. 1978).

Maryland Insurance Code §§ 23-401 *et seq*. regulates the cancellation of insurance contracts by premium finance companies. Maryland Insurance Code §§ 23-401 *et seq*. generally authorizes a premium finance company to cancel an insurance policy in accordance with certain notice requirements.  Maryland Insurance Code § 23-402(a) requires a premium finance company, "[a]t least 10 days before cancelling an insurance contract … to deliver or mail to the insured written notice of intent to cancel the insurance contract. … ." Maryland Insurance Code § 23-402(b) requires that the notice of intent to cancel provided by the premium finance company with respect to an automobile liability insurance contract, include "a statement in clear and specific terms that if the insured fails to replace the automobile liability insurance within the 10-day notice period, § 17-106 of the Transportation Article provides that uninsured motorist penalties be assessed and that all evidences of registration be surrendered to the Motor Vehicle Administration and that failure to surrender the evidences of registration may result in

suspension of current and future registration privileges." Maryland Insurance Code § 23-403(a) provides, in pertinent part:

> (a) Notice of cancellation; copy to insured.
>
> (1) After the end of the notice period under § 23-402(a) of this subtitle, the premium finance company may cancel the insurance contract by submitting to the insurer a notice of cancellation that specifies the effective date of the cancellation.
> …
> (b) Effective date.
>
> (1) If the insurer receives a notice of cancellation issued under subsection (a) of this section within 30 days after the effective date of cancellation specified in the notice, the insurer shall cancel the insurance contract effective on the date specified in the notice.

Consistent with the requirements of Maryland Insurance Code § 23-401 *et seq.*, PFS effectively cancelled the Policies by mailing the Notice of Intent to Cancel to the insured, with the required statutory language and providing the statutory minimum 10-day notice period. The Notice of Intent to Cancel was mailed on November 12, 2007. (Seaholm Aff., ¶ 10 and Exh. A; Complaint, ¶ 13 and Exh. C). The Notice of Intent to Cancel includes the following language:

> NOTICE:
>
> IF THIS CONTRACT INCLUDES AUTOMOBILE LIABILITY INSURANCE AND YOU FAIL TO REPLACE THE INSURANCE BEFORE THE EXPIRATION OF THE TEN DAY PERIOD, SECTION 17-106 OF THE TRANSPORTATION ARTICLE REQUIRES THAT UNINSURED MOTORIST PENALTIES BE ASSESSED AND EVIDENCE OF REGISTRATION BE SURRENDERED TO THE MOTOR VEHICLE ADMINISTRATION AND THAT FAILURE TO SURRENDER THE EVIDENCES MAY RESULT IN SUSPENSION OF CURRENT AND FUTURE REGISTRATION PRIVILEGES.

(Id.).

PFS then sent a Notice of Cancellation on December 3, 2007, effective December 6, 2007. (Seaholm Aff., ¶ 11 and Exh. B; Complaint, ¶ 14, Exh. D). The Insurers received the Notice of Cancellation on or before December 20, 2007. (Seaholm Affidavit, ¶ 11). The Policies were, therefore, effectively cancelled on December 6, 2007, in accordance with the Premium Finance Agreement between Coastal Roll-Off and PFS as well as Maryland Insurance Code § 23-401 *et seq*.

The process by which PFS cancelled the Policies was affirmed by Maryland's highest court in Northland Ins. Co. v. Walls, 291 Md. 604 (Md. 1981), a case with closely similar facts to the present case.

In Northland, the insured, H. David Walls ("Walls"), purchased an insurance policy and arranged to pay the policy premiums through a premium finance company, Tifco, Inc. ("Tifco"). 291 Md. at 605. The insurance premiums were advanced by Tifco under an agreement which required Walls to make installment payments to Tifco. Tifco was named "attorney in fact" with authority to cancel the policy if Walls failed to make timely payments. Id. at 606. Walls failed to make the required payments to Tifco, thereby defaulting on the agreement. Tifco notified Walls that if he did not cure the payment default, Tifco would cancel the insurance policy. Walls made no further payments after which Tifco cancelled the policy. Id.

Three months after Tifco cancelled the policy, one of Walls' trucks was involved in a collision. Walls sought coverage, and the court found that there was no coverage because the policy was cancelled. Id. The court noted that the policy was effectively cancelled by Walls through Tifco. Id. at 610. The court held that the policy was cancelled

10

upon the insurer's receipt of a copy of Tifco's cancellation notice, and that this notice ceased all obligations from the insurer to Walls. Id. at 613-14.

Here, as in Northland, where a premium finance company effectively cancelled a policy based on the insured's failure to make payments, PFS cancelled the Policies based on Coastal Roll-off's failure to make payments to PFS. PFS followed the statutory procedure set forth in the Maryland Insurance Code § 401 *et seq*. and approved by the Maryland Court of Appeals in Northland for cancelling a policy on behalf of an insured. PFS sent a Notice of Intent to Cancel on November 12, 2007 due to Coastal Roll-off's failure to pay its premiums in accordance with the Premium Financing Agreement. PFS then sent a Notice of Cancellation on December 3, 2007 indicating that the Policies were cancelled, effective December 6, 2007.

As in Northland, where the court held the insurer owed no obligation to defend or indemnify any party because the accident at issue occurred after the effective date the insurance policy was cancelled, here neither Insurer owes any duty to defend or indemnify any party with respect to the Accident or the Overbaugh Lawsuit because the cancellation by PFS terminated any obligation the Insurers may have owed to any party effective December 6, 2007. The accident occurred on January 8, 2008. Therefore, the Insurers owe no duty to Coastal Roll-Off or any of the other party.

*1. The effective date of the cancellation was prior to the Accident.*

It has long been understood that an insurance policy is effective on the date it is cancelled by either party. An automobile liability policy cancelled prior to the date of an accident provides no obligation on the part of the insurer to defend or indemnify its insured in relation to an accident occurring after cancellation. *See* Hardware Dealers Mut.

11

Fire Ins. Co. v. Springmann, 266 Md. 200, 211 (1972); Cohen v. Pennsylvania Cas. Co., 183 Md. 340, 345 (Ct. App. Md. 1944) ("Except as to rights acquired by persons injured while the policy was in force, there was nothing in it to prevent the parties to it, i.e., the insured and the [insurer], from cancelling the policy at any time before it expired."); Eurich v. General Casualty and Surety Co., 152 Md. 209 (Md. 1927) (liability policy that had been effectively cancelled prior to date of accident did not obligate insurer to defend its former insured).

The Fourth Circuit confronted a factually similar situation in Williams v. Dairyland Ins. Co., 1972 U.S. App. LEXIS 6822 (4th Cir. (Va.) 1972) and found that a premium finance company effectively cancelled a liability policy on behalf of the insured, prior to an accident, due to payment default by the insured. Dairyland issued an automobile liability policy to Willie Williams. To finance the policy, Williams contracted with Premium Acceptance Company. Id. at 1. The agreement between Williams and Premium authorized Premium to cancel the policy in the event of a default by Williams, but required Premium to provide Williams with written notice of any intent to cancel. Id. Williams failed to make his first payment due to Premium under the agreement. Premium then mailed Williams a "Notice of Intent to Cancel" after which Williams failed to cure his default. Id. In a letter to Dairyland dated October 23, 1969, Premium requested that Williams' policy be cancelled effective October 30, 1969. Id. at 2. Williams was in an automobile accident on November 9, 1969. Id.

The Fourth Circuit held that Dairyland owed no coverage obligation to Williams because his policy was effectively cancelled by Premium prior to the date of the accident. The court explained, "the cancellation was initiated by the insured through Premium,

12

Williams' attorney-in-fact…." Id. at 3. Here, just as in Northland and Williams, the premium finance company effectively cancelled the insurance policies at issue before the date of the accident. As such, the Insurers owe no obligation with respect to the Accident or the Overbaugh Lawsuit. *See also* Minnesota Lawyers Mut. Ins. Co. v. Baylor & Jackson, PLLC, 852 F.Supp.2d 647 (D. Md., April 3, 2012) (insurer had no duty to defend or indemnify its insured under claims-made liability policy where policy expired before claim was reported to insurer).

**B.      Overbaugh Has No Right To Dispute That the Policies Were Effectively Cancelled.**

Overbaugh, as a third party, has no contractual rights with respect to the Policies. Also, because the Accident occurred after the Policy was cancelled, Overbaugh never had any rights against Scottsdale or National Casualty.

In Narcisse v. Clarendon National Ins. Co., 807 So.2d 339 (Ct. App. La. 2002), the court confronted a situation similar to the present. Narcisse arose from an auto accident that occurred on August 5, 1995 in which a vehicle driven by Evans struck Narcisse. Evans was insured by Clarendon. Evans procured the insurance policy effective June 29, 1995, agreeing to pay the premium in five installments. Evans failed to pay the policy premiums and Clarendon cancelled the policy, effective July 30, 1995, six days prior to the accident. After Narcisse sued Evans, Narcisse initiated a declaratory judgment action against Clarendon seeking a determination that the Clarendon policy provided coverage for the accident. Clarendon moved for summary judgment, asserting that it cancelled the policy prior to the accident and, therefore, owed no obligation to defend or indemnify Evans. Id. at 340-41. The trial court agreed and the appellate court affirmed. Id. at 341-43.

In support of its motion for summary judgment, Clarendon showed that it properly cancelled the insurance policy in accordance with state insurance regulations. Id. at 342. Clarendon then asserted that Narcisse had no standing to challenge whether Clarendon effectively cancelled the policy. Id. The court agreed with Clarendon's position, finding that the stranger to the contract had no right to dispute the cancellation of the policy between the insurer and its insured:

> we agree in principle, without deciding, that there is merit to Clarendon's argument that [Narcisse], who were not parties to the insurance contract between it and Evans, have no valid interest in the communications between it and Evans, and thus have no standing to challenge whether Evans received proper notice that his policy was to be cancelled for nonpayment of premium.

Id. at 344 (emphasis added). The holding of Narcisse applies equally to the situation here. Overbaugh is a stranger to the insurance contracts issued to Coastal Roll-Off by the Insurers. He has no right to dispute the cancellation of the Policies by PFS on behalf of Coastal Roll-Off.

A non-party to an insurance contract has no rights under the policy. *See, e.g.* Capitol Indemnity Corp. v. Fraley, 266 Ga. App. 561 (Ct. App. Ga. 2004). Such a party has no standing to assert a defense that the insured could assert against an insurer, such as waiver or estoppel. Id. Fraley involved a declaratory judgment action relating to a commercial general liability policy issued by Capitol Indemnity to Dixie Tavern. Thomas Fraley sued Dixie alleging he suffered injuries in an altercation with bouncers outside the tavern. Capitol was notified of Fraley's claim against Dixie on September 18, 2001 and issued a reservation of rights letter on December 7, 2001. Capitol then initiated a declaratory judgment action seeking a declaration that it owed no coverage based on a number of policy exclusions. Id. at 562.

Fraley, a party to the declaratory judgment action, did not dispute Capitol's coverage defenses but instead argued only that Capitol was estopped from raising such defenses based on its delay in sending its reservation of rights letter to its insured and its further delay in initiating the declaratory judgment action. Id. at 562-63. Capitol argued that, as a third party to the insurance contract, Fraley cannot assert waiver or estoppel against Capitol. Id. at 563. The court agreed with Capitol, explaining:

> in the absence of a judgment against the defendants, Fraley has no rights under the Capitol Indemnity policy and thus could not sue the insurer directly. And we find that he also lacks standing to assert the defense of waiver or estoppel against Capitol Indemnity for failing to provide a timely notice of reservation of rights.

Id. at 563 (Emphasis added). The court further explained that this conclusion was not altered by the fact that Capitol Indemnity had named Fraley as a defendant to the declaratory judgment action. Id. at 564. *See, e.g.,* National Union Fire Ins. Co. of Pittsburgh, Pa. v. American Motorists Ins. Co., 269 Ga. 768 (1998) (non-insured has no right to complain about insurer's failure to issue reservation of rights letter to insured).

Here, just as the third party in Narcisse had no right to contest the manner in which the policy was cancelled as between the insured and its insurer, Overbaugh has no right to contest the manner in which the Policies were cancelled on behalf of Bounds because Overbaugh is a stranger to the insurance policies. Further, the accident here occurred more than a month after the Policies were cancelled. Thus, Overbaugh never had any vested right, or right of any kind, in the Policies.

Under these circumstances, Overbaugh has no right to contest the cancellation of the Policies by PFS on behalf of Bounds, effective December 6, 2007. He was a stranger to the Policies and never had a vested right, or a right of any kind, in the Policies.

Finally, in his Answer, Overbaugh indicates he "hasn't sufficient information to either admit or deny" the material allegations with respect to the manner in which PFS cancelled the Policies (Complaint, ¶¶ 10-22; Overbaugh Answer, ¶¶ 10-22). Coastal Roll-Off, the insured at whom these allegations are directed, failed to answer the Complaint and is deemed to have admitted these allegations pursuant to FRCP Rule 8(b)(6) which provides, "An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." Overbaugh's lack of information with respect to the manner in which PFS cancelled the Policies in concert with Coastal Roll-Off's admissions, pursuant to FRCP Rule 8(b)(6), indisputably confirm the truth of the manner in which PFS cancelled the Policies. Nonetheless, irrespective of Overbaugh's lack of information with respect to the cancellation of the Policies by PFS, the Insurers' Affidavits and documentary evidence submitted herewith independently establish the effective cancellation of the Policies by PFS.

The undisputed evidence establishes that the Policies were effectively cancelled effective December 6, 2007, thereby terminating any obligation either Insurer had under the Policies. Neither Insurer owes any obligation to indemnify any party with respect to either the Accident that occurred more than a month after the Policies were cancelled or the Overbaugh Lawsuit.

## CONCLUSION

For the reasons stated above, Scottsdale is entitled to an Order granting it summary judgment.

Dated: December 3, 2012

*/s/ Saleel V. Sabnis*
Richard J. Cohen (admitted pro hac vice)
Patrick B. Omilian (admitted pro hac vice)
Saleel V. Sabnis (No. 28214)
Latha Raghavan (No. 07268)
Goldberg Segalla LLP
*Attorneys for Plaintiffs*
1700 Market St., Suite 400
Philadelphia, PA 19103
Telephone: (267) 519-6800
Fax: (267) 519-6801
rjcohen@goldbergsegalla.com
pomilian@goldbergsegalla.com
ssabnis@goldbergsegalla.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that, on this 3rd day of December, 2012, I electronically filed the foregoing **Motion for Summary Judgment**, **Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment**, and **Appendix of Exhibits** with the Clerk of the District of Maryland using its CM/ECF system which resulted in electronic service on the following CM/ECF participant:

Blaine M. Kolker
Law Offices of Jeffrey J. Silver
*Attorneys for Defendant*
*Joshua W. Overbaugh*
1120 St. Paul Street, Suite 2 North
Baltimore, MD 21202
(410)-625-8800
kolker@r-rlaw.com

                                                  */s/ Saleel V. Sabnis*
                                                  Saleel V. Sabnis