IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE CO., et al., | * | |
| Plaintiffs | * | |
| v. | * | Civil No. TJS-11-2912 |
| ERIC B. BOUNDS, et al., | * | |
| Defendants. | * | |
| | * | |

\*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION AND ORDER**

This Memorandum Opinion and Order[1] addresses Plaintiffs Scottsdale Insurance Co. ("Scottsdale") and National Casualty Company's ("NCC") Motion for Summary Judgment, ECF No. 46; Defendant Joshua W. Overbaugh's Response in Opposition to Plaintiffs' Motion for Summary Judgment, ECF No. 49; and, Plaintiffs' Reply to Defendant Overbaugh's Response, ECF No. 50.   For the reasons stated herein, Plaintiffs' Motion for Summary Judgment is **GRANTED**.  This Memorandum Opinion and Order disposes of ECF Nos. 46, 49, and 50.

## I.     BACKGROUND

In reviewing the evidence related to a motion for summary judgment, the Court considers the facts in the light most favorable to the non-moving party.  *Ricci v. DeStafano*, 557 U.S. 557, 585 (2009); *George & Co., LLC v. Imagination Entm't Ltd.,* 575 F.3d 383, 391-98 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004).  Unless otherwise stated, the background provided here is comprised of undisputed facts.  Where a factual dispute between the parties exists, the facts are considered in the light most favorable to the non-moving party.

---

[1] On June 6, 2012, this case was referred to then-Chief Magistrate Judge Paul Grimm for all proceedings, pursuant to 28 U.S.C. § 636(c) by consent of the parties.  After Judge Grimm's elevation to United States District Judge, on December 20, 2012, this case was reassigned to me.

In October 2007, Defendant Bounds Trucking, Inc. d/b/a Coastal Roll-Off[2] ("Coastal")

"procured a Commercial Auto policy underwritten by NCC" (the "Auto Policy") and an "Excess

Liability policy . . . underwritten by Scottsdale" (the "Excess Policy") (collectively, "the

Policies").  Compl ¶ 10, ECF No. 1 at 2.  The policies provided that "[i]n return for the payment

of premium" and "[i]n consideration of the payment of premium," insurance would be provided

as outlined in each policy.  *Id*. ¶¶ 19, 20 & Ex. A, B.  Coastal paid the initial premium due on the

Policies, but failed to make any of the following nine monthly payments as required.  *Id.* ¶¶ 11-

12.  The company through whom Coastal had contracted to make its payments notified Coastal

that the Policies "were cancelled, effective December 6, 2007 due to Coastal's failure to pay its

premiums."  *Id.* ¶¶ 14, 18.  The Policies were never reinstated after they were cancelled.  *Id*. Ex

A, B & D, ECF Nos. 1-2, 1-3 & 1-5.

On January 8, 2008, more than one month after the Policies were cancelled, Defendant

Homesley (driving a truck that Coastal owned) was involved in an automobile accident ("the

Accident") with Defendant Overbaugh ("Overbaugh").  *Id.* ¶¶ 23-25, 27.  Overbaugh filed a

lawsuit in the Circuit Court for Worcester County, Maryland against Homesley, Coastal and

Bounds, who owned Coastal, (collectively, the "Underlying Defendants") on January 7, 2011[3]

(the "Overbaugh Lawsuit"), and Scottsdale retained counsel "to defend Bounds, Coastal and

Homesley from the Overbaugh Lawsuit."  *Id.* ¶¶ 28-29.  On October 12, 2011, Plaintiffs filed the

instant action in this Court, seeking a declaration that the Policies were "cancelled effective

December 6, 2007," and that Plaintiffs have "no duty to defend or indemnify Bounds, Coastal, or

Homesley with respect to the Overbaugh Lawsuit" or "with respect to the Accident."  *Id*.

---

[2] On May 17, 2012, the Court granted Plaintiffs' Motion for Default Judgment as to Defendants Coastal, Eric B. Bounds, and Douglas E. Homesley.  ECF No. 36.

[3] The case is captioned *Joshua W. Overbaugh v. Douglas E. Homesley, et al.*, Case Number 23-C-11-000017.

Overbaugh contends that summary judgment is not appropriate because material issues of fact remain in dispute.  Specifically, Overbaugh contends (1) that Plaintiffs waived their rights to deny coverage by acting inconsistently with these rights, and (2) that Plaintiffs should be estopped from asserting these rights now, after Overbaugh relied to his detriment on Plaintiffs' actions and assurances that coverage existed.  Plaintiffs contend that these facts are not material to the outcome of this case.

## II.      SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 806 (4th Cir. 2007) (citing Fed. R. Civ. P. 56(c)).  The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to any material fact.  *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).  In reviewing a motion for summary judgment, the Court considers the evidence in the light most favorable to the non-moving party.  *Ricci*, 577 U.S. at 585; *George & Co., LLC*, 575 F.3d at 391–92; *Dean*, 336 F. Supp. 2d at 480.

If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to identify specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To satisfy this burden, the non-moving party "must produce competent evidence on each element of his or her claim."  *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999).  Although the Court "must draw all reasonable inferences in favor of the non-moving party," that party "may not create a genuine issue of material fact through mere speculation, or building one

3

inference upon another." *Id.* (citing *Anderson*, 477 U.S. at 255; *Runnenbaum v. NationsBank*, 123 F.3d 156, 163 (4th Cir. 1997); *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 817–18 (4th Cir. 1995)).   Indeed, the existence of only a "scintilla of evidence" is not enough to defeat summary judgment. *Anderson*, 477 U.S. at 251.   Instead, the admissible evidentiary materials submitted must show facts from which the finder of fact could reasonably find in favor of the non-moving party. *Id.*

## III.    THE DECLARATORY JUDGMENT ACT

Under the Declaratory Judgment Act, a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."   28 U.S.C. § 2201(a).   The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995).   In general, a district court should entertain a declaratory judgment action "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409 (2004) (internal quotation omitted).   When a related state court proceeding is pending, however, a court must consider four factors (the "*Nautilus* factors") in determining whether to proceed with the declaratory judgment action in federal court:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

4

*Coffey*, 368 F.3d at 412 (citing *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493-94 (4th Cir. 1998) (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994))).

As to the first *Nautilus* factor, this Court finds that the State's interest is "not particularly significant" because the state law issues involved in this case are "unlikely to break new ground." *Coffey*, 368 F.3d at 414.  Similarly, the second factor does not suggest that this matter would be more efficiently resolved in State court, as Plaintiffs are not a party to the pending action, and dismissing this case in deference to the State "would not seem to advance any cause of efficiency." *Id.*  The third *Nautilus* factor causes no concern, as the only issues at stake in this declaratory judgment action are whether the Policies were cancelled prior to the Accident, and whether Plaintiffs have a duty to defend and indemnify the Underlying Defendants in the Overbaugh Lawsuit.  These issues would not be decided in the State court action, so there is no risk of creating an unnecessary "entanglement" by deciding them.  Finally, as to the fourth factor, there is no indication that Plaintiffs have engaged in forum-shopping.

In consideration of the *Nautilus* factors, the Court finds that entertaining this action is appropriate and "will serve a useful purpose in clarifying and settling the legal relations in issue." *Id*. at 412.

## IV.    DISCUSSION

Subject matter jurisdiction in this case is predicated on the diverse citizenship of the parties.  A federal court sitting in diversity must apply the choice of law rules applicable in the forum state.  *Klaxon v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941).  In the absence of a choice of law provision in a contract, Maryland generally follows the doctrine of *lex loci contractus* when determining which state's substantive law to apply to the interpretation of a

contract for insurance.  *Francis v. Allstate Ins. Co.*, --- F.3d ----, 2013 WL 829141 (4th Cir. Mar. 7, 2013); *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 659 A.2d 1295, 1301 (1995).  Under the *lex loci* principle, the law of the place where the contract was made governs. *Rouse Co. v. Fed. Ins. Co.*, 991 F. Supp. 460, 462 (D. Md. 1998).  "[A] contract is 'made' where the last act necessary for its formation is performed."  *Id.*  For an insurance policy, the last act necessary for formation of the contract is the delivery of the policy and payment of premiums. *Id.*; *Commercial Union Ins. Co. v. Porter Hayden Co.*, 97 Md. App. 442, 630 A.2d 261 (1993) (vacated on other grounds).

There are two insurance contracts between Plaintiffs and Coastal in dispute, an "Auto Policy" and an "Excess Policy."  Each of these Policies were signed, paid for (at least initially), delivered, and cancelled in Maryland.  The Policies do not contain choice of law provisions. Applying Maryland's choice of law rules, I find that the last acts necessary for the formation of the insurance contracts at issue occurred in Maryland, and will apply Maryland substantive law.

### A.    The Plaintiffs' Duties Under the Policies

To determine whether Plaintiffs are obligated to defend and indemnify the Underlying Defendants, this Court must address two issues: (1) the extent of the coverage under the terms and requirements of the Policies; and (2) whether the allegations in the Overbaugh Lawsuit bring the tort claim within the coverage of either policy.  *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 438 A.2d 282, 285 (1981) ("The first question focuses upon the language and requirements of the policy, and the second question focuses upon the allegations of the tort suit.")

Like other contracts, insurance policies are measured by their terms.  *Nat'l Grange Mut. Ins. v. Pickney*, 284 Md. 694, 399 A.2d 877, 882 (1979) (stating "an insurance policy is a

contract and it is under the terms of contract law of the State that it should be interpreted"); Pacific *Indemnity Co. v. Interstate Fire & Casualty Co.*, 302 Md. 383, 488 A.2d 486, 488 (1985) ("An insurance contract, like any other contract, is measured by its terms unless a statute, a regulation, or public policy is violated thereby.")  In this case, the terms of the insurance policies state that in return for the payment of insurance premiums, Plaintiffs would provide the insurance set forth in the policy.  Compl. ¶¶ 19-22, ECF No. 1 at 4.  There is no dispute between the parties about the interpretation of the policies: if the insured breached the contract by failing to pay a premium due, Plaintiffs would be permitted to cancel the policies.  The parties, in fact, agree that the insurance policies at issue were cancelled before the date of the Accident.  *See* Def.'s Opp. 1, ECF No. 49 at 1 ("Defendant concedes [the] factual assertions set forth in Plaintiffs' motion."); Pls.' Resp. 3, ECF No. 50 at 3.  Because the policies were cancelled prior to the Accident, Plaintiffs are not obligated to defend or indemnify any party with respect to the Accident under the terms of the Policies.[4]  Because the Court determines that the Policies were cancelled prior to the Accident, there is no need to address whether the allegations in the Overbaugh Lawsuit would have been covered by either policy, had the policies been in force. For the sake of argument, the Court will assume that the claims would have been covered by the Policies, had they not been cancelled.

---

[4] Initially, Plaintiffs contended that Overbaugh lacked standing to contest the allegation that the insurance policies at issue were cancelled prior to the Accident.  The core of Plaintiffs' argument is that because Overbaugh was not a party to the Policies, he has no contractual rights under the policies.  Pls.' Mem. 13, ECF No. 46-1 at 13.  Overbaugh contends in his response that he has standing to contest the cancellation of the policies.  Def. Resp. 3, ECF No. 49 at 3.  This Court notes, however, that because Overbaugh concedes that the insurance policies were cancelled prior to the Accident, Plaintiffs' argument is moot.  This Court will, therefore, not address Plaintiffs' argument that Overbaugh lacks standing to contest the cancellation of the policies.

Overbaugh contends that the Plaintiffs each have a duty to defend and indemnify the Underlying Defendants based on the doctrines of waiver and estoppel.   In essence, while Overbaugh does not dispute that the policies were cancelled prior to the Accident, he contends that the Plaintiffs' behavior after the Accident amounts to a waiver of any right they may have had not to defend or indemnify the Underlying Defendants.   In addition, Overbaugh contends that Plaintiffs should be estopped from refusing to defend and indemnify the Underlying Defendants because he relied, to his detriment, on Plaintiffs' actions.   In support of these arguments, Overbaugh makes the following general factual assertions:   After the Accident, Plaintiffs' representative advised Overbaugh "there was valid coverage" for the Accident; NCC compensated Overbaugh's lien holder for the property that was damaged; and, Overbaugh relied on Plaintiffs' conduct and "delayed institution of litigation and incurred expense as a result of the delay."   Def. Resp. 2, ECF No. 49 at 2.   I will consider Overbaugh's factual assertions in the light most favorable to him, as they remain in dispute.

The principles of waiver and estoppel are "closely inter-related," but each has "separate and distinct functions."   *Wright v. Wagner*, 182 Md. 483, 34 A.2d 441, 445 (1943) (citing *Benson v. Borden*, 174 Md. 202, 198 A. 419 (1938) (discussing the difference between the principles of waiver and estoppel).   In short, "[w]aiver is the voluntary surrender of a right; estoppel is the inhibition to assert it from the mischief that has followed."   *Id.*   This distinction is at the heart of the difference between the two principles.   Waiver requires an intentional relinquishment of a right, without regard to the conduct of another party.   Estoppel does not require intentional conduct, but only conduct that reasonably causes another to act in a certain way.   *Id.* at 446.

8

**B.     Waiver**

In the context of insurance policies, the "doctrine of waiver may operate to deprive an insurer of a right it would otherwise enjoy. *Government Employees Ins. Co. v. Group Hospitalization Medical Services, Inc.*, 322 Md. 645, 589 A.2d 464, 466 (1991). In this context, waiver is

> the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances.

*Id*. (quoting *Food Fair v. Blumberg*, 234 Md. 521, 200 A.2d 166 (1964)).

The doctrine of waiver, however, "cannot operate to expand or establish insurance coverage." *Creveling v. Government Employees Ins. Co.*, 376 Md. 72, 828 A.2d 229 (2003); *see also Aetna Casualty and Surety Co. v. Urner*, 264 Md. 660, 287 A.2d 764 (1972). Maryland's Court of Appeals has recognized

> a distinction between defenses founded upon lack of basic coverage and those arising from the failure of the claimant to satisfy some "technical" condition subsequent.  The former, it is apparent, may not be waived merely by the company's failure to specify them in its initial response to the claim, for the effect of that would be to expand the policy to create a risk not intended to be undertaken by the company.

*Insurance Co. of N. Amer. v. Coffman*, 52 Md. App. 732, 451 A.2d 952, 956-57 (1982) (citing *St. Paul Fire & Mar. Ins. v. Molloy*, 291 Md. 139, 433 A.2d 1135 (1981)).

In support of his "waiver" argument, Overbaugh relies on *Progressive Cas. Ins. Co. v. Ehrhardt*, 69 Md. App. 431, 436-37 (1986).  ECF No. 49 at 5.  In *Ehrhardt*, the Court of Special Appeals held that an insurer waived its rights not to cover an insured under a defaulted policy. *Id*.  The named insured failed to make a timely payment before his insurance policy expired.  *Id* at 436.  Several days after the policy lapsed, the insured was involved in a motorcycle accident. Eventually, the insurance company was informed of the accident.  Thereafter, the insurer backdated the lapsed policy to extend coverage to the accident, and accepted the payment of a

premium. *Id*. The court held that by actually backdating the policy, with full knowledge that backdating the policy would result in coverage for the accident, the insurer waived any right it might have had to deny coverage. *Id*. at 447.

Courts have been reluctant to extend the holding of *Ehrhardt* to other cases. In *Maryland Auto. Ins. Fund v. John*, 198 Md. App. 202, 16 A.3d 1008 (2011), the court faced a similar set of facts. The named insured on a policy died, and the insurer orally agreed to extend coverage to the decedent's sister, but did not modify the policy in writing. The decedent's sister paid the premiums due under her sister's policy for more than a year, and relied on the insurer's representations that she was covered under the policy. The court, however, refused to apply *Ehrhardt*, and noted that the actual backdating of a policy (as in *Ehrhardt*) was sufficiently different from the oral extension of coverage (as in *John*) to compel a different result. The court noted that "[e]xisting precedent prohibits using the doctrine of estoppel to impose coverage" after the policy has expired. *John*, 16 A.3d 1016. The court cited with approval *Nielson v. Allstate Ins. Co*, 784 S.W.2d 735 (Tex. App. 1990). *Nielson* further expands on the distinction between the *creation* of coverage and the satisfaction of technical *conditions* of coverage:

> Although waiver and estoppel may operate to avoid forfeiture of a policy and may prevent an insurance company from avoiding payment when the insured fails to comply with some requirement of the policy, waiver and estoppel cannot enlarge the risks covered by a policy and cannot be used to create a new and different contract with respect to the risk covered and the insurance extended.

*Id*. at 737.

In any event, the facts of this case are readily distinguished from those in *Ehrhardt*. Unlike *Ehrhardt*, the insured in this case took no steps to revive the cancelled insurance policy. More importantly, Plaintiffs took no steps to backdate the cancelled policies, and did not accept any premiums toward the extension of coverage. *Ehrhardt* is simply inapposite to the facts of

this case.  Because the doctrine of waiver cannot be used to create coverage, Overbaugh's argument fails.

### C.      Estoppel

"As a general rule, estoppel cannot extend insurance coverage where it does not exist." *Hartford Fire Ins. Co. v. Annapolis Bay Charters, Inc.*, 69 F. Supp. 2d 756, 763 (D. Md. 1999); *see also Sallie v. Tax Sale Investors, Inc.*, 149 Md. App. 141, 814 A.2d 572, 576 (2002) (confirming that "estoppel may occur only when it does not create new coverage; an extension of coverage may only be created by a new contract.") (internal quotation omitted); *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 497 (4th Cir. 1998) (applying Maryland law and stating that "waiver or estoppel may occur only when it does not create new coverage; an extension of coverage may only be created by a new contract").

In support of his estoppel argument, Overbaugh cites to *Loyola Univ. of Chicago v. Humana Ins. Co.*, 996 F.2d 895 (7th Cir. 1993).  In *Humana*, a hospital brought an action against its patient's insurer after the insurer refused to cover the patient's heart transplant because the hospital failed to obtain prior approval before conducting the procedure.  *Id.*  The hospital argued that the insurer should be estopped from denying coverage, because the hospital relied on the insurer's advice that no prior approval was required for a heart transplant.   *Id.* at 902. Ultimately, the hospital's estoppel argument failed because the court was not convinced that the hospital had actually relied on the insurer's advice.  In any event, *Humana* is inapposite to the present case.  In *Humana*, insurance coverage was in place, but there was a dispute about whether the insured had complied with the technical terms of his coverage (prior approval for heart transplants).  In Maryland courts, in such a case, an estoppel argument would be proper, because it would not result in the creation of coverage where none existed, but rather a more

11

lenient application of the technical conditions of coverage in a policy, in favor of the insured. Overbaugh's estoppel argument, however, attempts to do what Maryland law prohibits: to create or extend insurance coverage where no policy was in place.  This argument must fail.  Because estoppel cannot create or extend insurance coverage where it does not exist, the inquiry ends.

      **D.**    **The Scope of Relief**

Plaintiffs seek a judgment from this Court declaring the following:

1.      That the Auto Policy was cancelled effective December 6, 2007;

2.      That the Excess Policy was cancelled effective December 6, 2007;

3.      That Scottsdale Insurance Company has no duty to defend or indemnify Bounds, Coastal or Homesley with respect to the Accident;

4.      That Scottsdale Insurance Company has no duty to defend or indemnify Bounds, Coastal or Homesley with respect to the Overbaugh Lawsuit;

5.      That National Casualty Company has no duty to defend or indemnify Bounds, Coastal or Homesley with respect to the Accident; and,

6.      That National Casualty Company has no duty to defend or indemnify Bounds, Coastal or Homesley with respect to the Overbaugh Lawsuit.

For the reasons set forth above, the Court will grant judgment in favor of Plaintiffs.  An Order containing the declarations sought by Plaintiffs will follow.

**V.**    **CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Summary Judgment is **GRANTED**. The Court concludes as follows: The Auto Policy and the Excess Policy were both cancelled effective December 6, 2007; Scottsdale Insurance Company has no duty to defend or indemnify Bounds, Coastal or Homesley with respect to the Accident or the Overbaugh Lawsuit; and,

National Casualty Company has no duty to defend or indemnify Bounds, Coastal or Homesley

with respect to the Accident or the Overbaugh Lawsuit.

Judgment shall be entered by a separate Order

SO ORDERED.

Date:   March 8, 2013                            _____/s/_____
                                                 Timothy J. Sullivan
                                                 United States Magistrate Judge